451 P.2d 778

**FREEWAY PARK BUILDING, INC., Plaintiff and Respondent,**

**v.**

**WESTERN STATES WHOLESALE SUPPLY, Bill J. Polteno and Jack E. Lords, Defendants and Appellants.**

**No. 11279.**

Supreme Court of Utah.

March 11, 1969.

2. 185 Cal.App.2d 776, 8 Cal.Rptr. 665 (1960), a decision of an intermediate court of appeals.

Horace J. Knowlton, Salt Lake City, for appellants.

F. Burton Howard, Salt Lake City, for respondent.

ELLETT, Justice:

This was an action to collect rentals past due on a lease and for an attachment of property to secure such rentals. The defendants counterclaimed for wrongful attachment and wrongful eviction and asked for general and punitive damages. Hereafter the plaintiff (respondent) will be referred to as the landlord, and the defendants (appellants) will be referred to as tenants.

This case was taken from the jury by the trial judge, who found for the landlord except that on the issue of wrongful attachment he found for the tenants but awarded nominal damages only.

The tenants appeal and assign two grounds of error: (1) In failing to find a wrongful eviction, and (2) in refusing to allow the jury to determine the question of damages, both general and punitive.

The landlord cross appeals and claims that the trial court erred in three particulars: (1) In finding a wrongful attachment; (2) in failing to find that the tenants were estopped to assert wrongful attachment; and (3) in assessing nominal damages against the landlord.

Before discussing the points raised by this appeal, we should note the following facts:

The lease was in writing and was for two years' duration with rents payable monthly, the first and last months' rental being paid at the time of the signing of the lease.

The rental payments were duly made for 15 months. A check given by the tenants for the rental due July 15, 1966, would not clear the bank because of insufficient funds. No further payments were ever made by the defendants.

On September 26, 1966, the plaintiff commenced this action by filing a complaint and securing a writ of attachment for the property of the defendants upon the leased premises.

The lease covered approximately 4,000 square feet of a warehouse building, including 500 square feet of office space. The attorney for the landlord accompanied the officer executing the writ of attachment and directed him to attach some $15,000 worth of inventory and to remove the employee of the tenants from the office and change the locks on all doors.

On October 6, 1966, a notice to pay the rent due or quit the rented property was served upon the defendants. Five days later no rent having been paid, the landlord purported to amend its complaint to state a claim in unlawful detainer.

The propriety of attempting to mix other causes of action with one for unlawful detainer has not been raised in this case.

We will examine the various assignments of error.

## WRONGFUL EVICTION

The lease contained a provision to the effect that if rent was unpaid for a period of 15 days, the landlord could elect to re-enter and take possession without notice or legal process.

At early common law this power of the landlord was sanctioned, but since eviction often led to a breach of the peace, a statute of forcible entry [1] was enacted in 1381 which made it a crime to forcibly evict a tenant. However, this statute did not give a cause of action to a defaulting tenant because it was held that he had no legal right to remain in possession after he had breached his lease.[2] In 1840 the English courts by judicial decision held that a defaulting tenant had a cause of action for assault and

---

1. 5 Rich.2d, c. 2.

2. Turner v. Meymott, 130 Eng.Rep. 64 (1823); Pollen v. Brewer, 141 Eng. Rep. 860 (1859).

battery against a landlord who used force in evicting the tenant.[3]

The law as it presently exists in England permits a landlord to use reasonable force to expel an occupant from a wrongful possession without the landlord being liable for tort.[4] The weight of authority in America, absent a statute, is in conformity with Newton v. Harland,[5] although there is some authority following the present English rule. See annotation in 45 A.L.R. at 309.

In the absence of a statute to the contrary, the weight of authority in the United States also is that the parties may agree in a lease that the landlord may re-enter with or without force for specific conditions broken; and when the specified condition has been broken; if the landlord can re-enter and take possession without causing a breach of the peace, he may do so, and the tenant will have no cause for action. See annotation in 6 A.L.R.3d at 177.

However, in states with a forcible entry statute such as Utah has, such a provision in a lease has been held to be void as against public policy. Jordan v. Talbot, 55 Cal.2d 597, 12 Cal.Rptr. 488, 361 P.2d 20, 6 A.L.R.3d 161 (1961).

 Our forcible entry and detainer statute (Sec. 78–36–3, U.C.A.1953) provides a speedy and adequate remedy against a ten-ant who wrongfully is in possession of land. It says that "every person" who does certain things is guilty of forcible entry, etc. There is no exception in the statute for one who may by contract be authorized to enter, or for an owner who as a matter of law may have a right to the possession. *Everyone* is guilty of a forcible entry who commits the acts specified. All that an occupant needs to show in order to be protected against self-help eviction is to show that he was in peaceful possession of the land within five days prior to the unlawful entry. If this is shown by a tenant in possession, the one entitled thereto must secure his rights under the statute; and if he takes the law into his own hands and turns a tenant in peaceable possession out by means of force, fraud, intimidation, stealth, or by any kind of violence, he makes himself liable to that tenant for damages.

In the case of Peterson v. Platt, 16 Utah 2d 330, 400 P.2d 507 (1965), the tenant of an Arctic Circle Drive-In was two months in arrears in the payment of his rent. The landlord during the absence of the tenant took possession and changed the locks on the doors. Judgment was rendered for the tenant, and the landlord appealed. In affirming the judgment, this court said at pages 331 and 332 of the Utah Reports, 400 P.2d at page 508:

3. Newton v. Harland, 133 Eng.Rep. 490.
4. Hemmings v. Stoke Poges Golf Club, 1 K.B. 720 (1920).
5. See footnote 3.

Our previous decisions construing our forcible entry and detainer statute places a duty on a person whether entitled to the real property in question or not, to not use force or stealth or fraud in obtaining possession of such realty. Such forcible entry and detainer statute creates a right in a person who is in actual peaceable possession of such real property to a cause of action against a person who, in his absence, and without legal process, by force, stealth or fraud, takes the possession of such property from him. Such being the law, the judgment is affirmed. * * *

In the case of King v. Firm, 3 Utah 2d 419, 285 P.2d 1114 (1955), the appellant was a tenant of the respondent. He brought an action for unlawful eviction from leased premises and for conversion of personal property. The judgment in the trial court was adverse to him, and he appealed. *The lease provided that if the rent should remain unpaid for a period of 20 days after it should become due, it would be lawful for the lessors to re-enter and take possession of the premises without notice or legal process.* On July 26, 1952, the landlord served a notice of termination of the lease for failure to pay the monthly rentals reserved in the lease. On August 19, 1952, the tenant tendered $100, which was refused by the landlord. Four days later, during the absence of the tenant, the landlord requested the employees of the tenant to leave and then padlocked the place. The court found that the tenant owed $87.10 as rent when the notice was served upon him. In affirming the judgment, this court said at pages 425–427 of the Utah Reports, 285 P.2d at page 1118:

* * * However, even if the notice of "termination of lease" served on King was an unequivocal act evidencing the landlord's election to terminate the lease, *it does not follow that without King's consent* and during his absence they could rightfully enter and dispossess him. Utah has enacted Forcible Entry and Detainer Statutes and a landlord may not without the express consent of a tenant repossess his property without resorting to remedies provided in those statutes. * * *

* * * * * *

* * * There is no question under Utah cases that a violation of the duty set by the statute gives rise to an action for damages, not in an action under the Forcible Entry and Detainer Statute but as a separate tort. * * *

Appellant King could have brought action under the Forcible Entry Statute to regain possession of the property and damages incidental to his ouster; but he did not choose that remedy. The statute places a duty upon any person, whether entitled to possession or not, not to use force or stealth or fraud in gaining possession of realty. Correspondingly, it creates a right in the person in actual peaceable possession not to have his pos-

session disturbed other than by legal process. Therefore, regardless of his lack of entitlement to the property, King had a cause of action for the invasion of that right. * * *

Hargrave v. Leigh, 73 Utah 178, 273 P. 298 (1928), was a case similar to the instant matter. There, the landlord in the absence of the tenant sued out a writ of attachment on a claim for alleged unpaid rent and personally directed the sheriff to levy upon all the tenant's furniture, household effects, and wearing apparel, and to store the same in a furnace room. Instead of changing the locks, as was done in the instant case, the landlord put another tenant in possession. There, as here, the attachment was void for failure to file the affidavit required by the statute. This court said at page 183 of the Utah Reports, 273 P. at page 300:

. * * * It was plain from the facts and circumstances proved that the attachment proceedings were resorted to in the absence of the plaintiff as a means of evicting her from the apartment. * * *

The fact that the defendant Forbes procured and actively participated in the wrongful eviction was expressly proved, and the circumstances of the transaction, together with the plain purpose and object of the proceeding, were such that the court was fully justified in implying that the conduct of Forbes was malicious. * * *

■ Even if the attachment in the instant case had been lawful, the eviction of the tenants was not. It was up to the officer attaching the personal property to keep it safe; and while it may be proper to lock attached property in a warehouse where because of bulk it cannot be moved, this does not say that a tenant can be denied access to his office space simply to accommodate the sheriff. We hold that there was an unlawful eviction of the tenants in this case and that plaintiff is liable for such damages as it caused, including a possible punitive measure.

## JURY TO ASSESS DAMAGES

The trial judge did not believe the tenant had sustained any damages by reason of the wrongful attachment.

There was evidence to the effect that the tenants had made a profit during the five months immediately preceding the attachment amounting to approximately $15,000. The records were not complete, and a certified public accountant doing the best he could with what he had calculated the gross sales for the five-month period to be $136,-000 and the net profit as stated above.

■ The fact that a business has not been in operation long enough to have a history of profit or loss should not deprive one of the right to convince a jury, if he can do so, that he would have made a prof-

it if his business had not been interfered with. In this particular case the jury might not have found a loss of profits occasioned by the wrongful attachment because the income tax return for the year showed a net loss. However, that does not necessarily mean that there would have been a loss had the wrongful attachment not been made. In any event, the jury should have been permitted to determine the amount of damage, if any, which may have been occasioned by any wrongful interference with the operation of the lawful business of the defendants.

■ Where no books are kept in a simple business enterprise, an estimate of profits may be given by one who is experienced in the business. Graham Hotel Company v. Garrett, 33 S.W.2d 522 (Tex.Civ.App.1930).

In this case concrete data was given in evidence; and while the records were not sufficient to give the exact prior earnings, we think they were sufficient to enable the jury to infer the amount of damages, if any, which were occasioned by reason of the wrongful attachment and eviction, and thus to give a just verdict in the case. See McCormick on Damages, Hornbook Series, Sec. 229.

There was also testimony that as soon as the salesmen for the tenants learned that there would be no material for jobs,[6] they quit.

If the jury should conclude that the landlord acted maliciously in attaching some $15,000 worth of merchandise to secure a $348 payment and in connection therewith wrongfully evicted the tenants, they should be permitted to assess the damages, and the landlord is in a poor position to insist that the damages he caused must be proved to a mathematical certainty. Certainly the evidence was such as to sustain a finding that a going business was completely disrupted, if the jury chose to so find.

The trial judge found that the actions of the landlord were not malicious, unlawful, or without probable cause, and concluded that punitive damages would not lie, although he awarded nominal damages for the wrongful attachment.

■ The statutes of some states specifically make want of probable cause an element of a cause of action for wrongful attachment. Utah has no such statute, and we think one who wrongfully attaches property should respond for the mischief which he causes. We further think the court erred in not permitting the jury to determine whether or not the actions of the landlord were a mere subterfuge to dispossess the tenants and thus be unlawful and malicious under the evidence given in this case.

6. The business of the defendants was selling and installing home-improvement jobs.

## WAS THE ATTACHMENT WRONGFUL?

By Sec. 38–3–1, U.C.A.1953, the landlord had a lien for rent due upon all non-exempt property of the tenants brought or kept upon the leased premises and for 30 days thereafter. The landlord may have the personal property of tenants subject to the lien attached without any other grounds for attachment being stated. Sec. 38–3–3, U.C.A.1953. However, before the lessor may cause such a writ of attachment to issue, he must file a complaint and an affidavit duly sworn to, setting forth the amount of the rent due, a brief description of the leased premises, and must further state under oath that such writ of attachment is not sued out for the purpose of vexing or harassing the lessee. Sec. 38–3–4, U.C.A.1953.

■ The affidavit filed by the landlord did not comply with this last provision of the statute, and the trial court properly held that the attachment was void.

## ARE THE TENANTS ESTOPPED TO ASSERT WRONGFUL ATTACHMENT?

■ The landlord cites many cases holding that when a bond is given to secure the release of attached property, the defendant and his bondsmen are estopped to deny that the attachment was lawful *when they are sued upon the bond.* This is especially proper where the property is released at the instance of the owner and thereafter he suffers a judgment to be taken against him. Neither he nor his bondsmen should be heard to say that the attachment was wrongfully issued and, therefore, they need not respond on their solemn obligation to produce the property or to pay the judgment. If a defendant and his bondsmen desire to contest the validity of the attachment, they should do so without giving a forthcoming bond or a bond to pay the judgment. The cases cited are not authority for the proposition that a defendant may not put up a bond to get his property back without losing his cause of action for wrongful attachment when his liability on the bond is not called in question. There is no merit to this contention.

## WERE NOMINAL DAMAGES ERRONEOUSLY ASSESSED?

The question of nominal damages has been sufficiently discussed above. In addition to what has been said we also think the jury should be permitted to determine whether the landlord acted maliciously in evicting the tenants so as to justify the imposition of punitive damages and, if so, the amount thereof.

The judgment of the trial court is reversed and the case is remanded for a new trial. The appellants are awarded their costs.

In view of statements contained in the dissenting opinions, it is appropriate to make the following observations:

The instant case is not concerned with recovery under the Forcible Entry and Detainer Statute. The tenants are not asking for restitution as they would do under that statute. (See Sec. 78–36–10, U.C.A.1953). This case is like that of King v. Firm, supra, in that it is based upon a separate tort, to wit, that of wrongful eviction, and any reference to the statute is merely to show the reasons why a landlord may not take the law into his own hands and evict a defaulting tenant.

This action was begun for rent due. The counterclaim was filed for wrongful eviction. Thereafter in an effort to cure the wrongful eviction the plaintiff tried to bring in a question of unlawful detainer. The appellants have never sought anything except damages for the tort inflicted upon them and this opinion deals only with the questions presented to us by way of the assignments of error.

CROCKETT, C. J., and TUCKETT, J., concur.

CALLISTER, Justice (dissenting):

Defendants' basic point on appeal is that they were not served with a notice to quit until the sixth of October, 1966, and that plaintiff commenced its action September 26, 1966; therefore, defendants were wrongfully evicted for plaintiff's failure to comply with Section 78–36–3(3), U.C.A.1953.

Defendants' argument is without merit, since plaintiff's action in September was to enforce an alternative remedy, namely, the enforcement of a landlord's lien by a writ of attachment.* Under these circumstances, the requirements of the unlawful detainer statute were irrelevant.

To further clarify this matter, the landlord pursued two remedies in sequence. First, plaintiff filed a complaint for rentals due, for a writ of attachment and restitution. An affidavit was filed contemporaneously with the complaint, and a writ of attachment was granted by the court. A praecipe was issued to the sheriff instructing him to attach all personal property located on the premises, to change the locks, to remove all persons located therein, and to take possession thereof. Subsequently, defendants furnished an undertaking, and on October 6, 1966, the attachment was dissolved, and the defendants' bond was substituted therefor. On October 6, 1966, plaintiff served a three-day notice to pay rent or terminate the tenancy, and on the 11th of October, plaintiff amended its complaint to include an unlawful detainer action.

Defendants have elected not to appeal in regard to their counterclaim for wrongful attachment for which the trial court awarded them damages. Their sole claim of error involves an alleged wrongful eviction which they attribute to plaintiff's failure

* See Sections 38–3–1 and 38–3–35 U.C.A. 1953.

to serve a notice to quit prior to filing its complaint. Since the initial complaint did not involve an unlawful detainer action, a notice to quit was not a prerequisite. The damages to which defendants claim they are entitled on appeal resulted from a wrongful attachment and not a wrongful eviction. Since they have not appealed the award therefrom, the judgment of the trial court should be affirmed.

HENRIOD, Justice (dissenting):

I dissent since I think the main opinion seems to be deciding issues foreign to and not raised on this appeal.

Western urges wrongful eviction because of failure to give timely notice pursuant to the *unlawful detainer* statute.[1] The pretrial order said:

> The trial court is called to determine whether plaintiff's use of the writ of attachment to close the premises and deprive the defendants from access thereto was improper; whether plaintiff wrongfully evicted the defendants from the premises pursuant to the *unlawful detainer statute*; and if improper conduct is found on the part of the plaintiff, to determine what damages, if any, resulted to defendants from plaintiff's action.

The trial court found there was a wrongful attachment, and gave damages therefor,

and Western does not complain about such award on appeal. Western's grounds for appeal are only that Freeway violated *the unlawful detainer statute* by failing to give proper notice *thereunder*, and a question as to damages.

Nonetheless, the main opinion decides the issues under the provisions of the forcible entry statute,[2] which statute was never mentioned or argued by Western on its appeal. The opinion points out that all an occupant need show for protection against eviction is peaceful possession within five days prior to the unlawful entry,[3] under a statute which likewise never was cited by Western nor argued on appeal, but represents a *gratuity by this court.* However, no such gratuity is urged on appeal,—the only argument being that there was a wrongful eviction because required notice was not properly given under the *unlawful detainer* statute.

Without commenting on the merits under the particular facts of this case, possibly it could be argued the forcible entry was an issue on this appeal,—but Western was not constrained to urge it. Hence this issue is not before us.

True, the main opinion has decided the wrongful attachment issue, raised *not* by appellant, but by respondent, in its favor, based on insufficiency of the affidavit sup-

---

1. 78–36–3(3), Utah Code Annotated 1953.
2. 78–36–1, 78–36–2, Utah Code Annotated 1953.

3. 78–36–9, Utah Code Annotated 1953.

porting the attachment order, but that issue was raised somehow by the court here in favor of Western,—not .by the appellant Western. It might be observed parenthetically, that although it was not a matter before this court, the main opinion again gives the appellant an unwanted and unwarranted assist when it says that the statute required that the affidavit should include a statement that the writ "is not sued out for the purpose of *vexing or harassing* the lessee." The affidavit in this case said it was not sued out "to hinder, delay or defraud any creditor of said defendants." This affidavit was prepared on a printed form obtainable from the clerk of the court or any number of printers, for a small fee, and has been used without technical objection for decades. In my opinion such affidavit better protects the defendant under the statute, but at least has a connotation that is synonymous with "vexing" or "harassing." Lawyers will be interested to note that the printed form "Affidavit for Attachment" which they have been using will now subject their clients to an unlawful attachment action or an unlawful detainer action, with a claim for punitive damages if ever again they use such a form.

This court often has refused to consider issues not raised save for the first time on appeal,[4] or not properly objected to in the trial proceedings.[5] A fortiori, this court has no authority to raise, sua sponte, such issues for the first time on appeal, unless they be jurisdictional ones. This case should be affirmed with no costs awarded because of its novelty.

---

4. In re Estate of Ekker, 19 Utah 2d 414, 432 P.2d 45 (1967).

5. Porcupine Reservoir Co. v. Lloyd W. Keller Corp., 15 Utah 2d 318, 392 P.2d 620 (1964).