**Martha MALCOLM and Homer Malcolm, Appellants, Defendants Below,**

v.

**Louis Jackson LITTLE et al., Appellees, Plaintiffs Below.**

Supreme Court of Delaware.
Aug. 8, 1972.

Julian D. Winslow, Wilmington, for appellants, defendants below.

L. Vincent Ramunno, Wilmington, for appellees, plaintiffs below.

CAREY and HERRMANN, JJ., and DUFFY, Chancellor, sitting.

CAREY, Justice:

In this appeal from the Superior Court, the appellants seek the reversal of a judgment in favor of the appellees, entered after a jury trial in an action for illegal eviction and conversion. The jury awarded compensatory and punitive damages, with a small deduction allowed on appellants' counter-claim.

The appellant Martha Malcolm is the owner of an apartment building; the appellant Homer Malcolm is her son and admitted agent for all of her affairs concern-

ing the building. They are herein referred to as "appellants." The appellee Betty Ellen Little is the mother of appellees Louis J. Little and Ronald J. Little, both minors.[1] The appellees were plaintiffs below and are referred to collectively.

Because the judgment below is based upon a jury verdict, we are bound thereby, if it is supported by evidence. Art. 4, Del.Const. § 11(1)(a), Del.C.Ann. Appellants apparently overlooked this rule because, throughout their briefs, they seem to assume that their version of the operative facts is correct. Of course, this is not the law, as counsel must keep in mind in preparing their briefs.

Following the trial, appellants filed a motion for judgment n.o.v., or a new trial, and a motion to reduce the damage award. More than sixty reasons were advanced in support of those motions. In a letter opinion, the trial Judge patiently ruled on each point and denied appellants' motions. Many of those contentions are pressed in this Court. We see no need to discuss most of them. We limit our discussion to two arguments, hereinafter mentioned; as to the appellants' other contentions, we hold them adequately answered by the Court below.

The undisputed facts pertinent to the issues hereinafter discussed may be very briefly described: appellees had been residing as tenants in appellants' apartment building, and had fallen four weeks behind in their weekly rent payments; late one evening, while no one was in the apartment, appellants changed the locks on the doors, and thereafter refused to allow appellees access to the apartment or any of its contents. Some of the contents were wearing apparel, which is exempt from distress, 10 Del.C. § 4902.

The two points which we pass upon are: (1) May an action for illegal eviction be

1. Beatrice Ellen Little Jones, a daughter, was also named as a plaintiff in the complaint. She failed to appear in the action and summary judgment in favor of appellants was granted against her.

prosecuted in Delaware?; and (2) Was the amount of damages awarded excessive?

## I.

■ The appellants first object that "illegal eviction" does not exist as a cause of action in this state.[2]

The jury was charged, in part, as follows:

". . . Some of the rights of the tenant continue even if the rent is overdue or even if a lease has expired.

"The law, however, does give landlords certain rights in respect to tenants and their property, and provides how these rights may be asserted. In this case, if [appellees] were behind on their rent [appellants] had no right to deprive [appellees] of the possession of the apartment without taking the legal steps which are required by law. These legal steps include, among other things, .a proper notice to the tenants to vacate and a court order in ordering [sic] the landlord or permitting the landlord to re-take physical possession of the property in question.

. . . . . .

". . . So a correct procedure is, first of all, to give a tenant notice to leave[3] and, if the tenant does not leave at the end of the notice period, to then obtain a court order permitting a landlord to take physical possession of the property . . ."

The above are not the full instructions given by the trial Judge; however, for present purposes, they adequately outline the illegal eviction theory pursued below.

A number of the cases dealing with illegal eviction are collected in Anno. 6 A.L. R.3d 177 (1966). The common law rule that the landlord may expel holdover tenants without process appears to still be followed in several states. That appears to have been the early rule in Delaware. State v. Stansborough, Del., 1 Del.Cas. 129 and 428 (1797).

More recently, however, the courts of many states have held that the enactment of forcible entry and detainer statutes has modified the common law and that the landlord, in order to dispossess a tenant, must proceed by the judicial means afforded by the statutes. Failure to proceed by such means may result in the landlord being liable to the tenant in damages. See, for example, Peterson v. Platt, 16 Utah 2d 330, 400 P.2d 507 (1965); Anno. A.L.R.3d, *supra.*

"Forcible Entry, Detainer and Holding Over" statutes—10 Del.C. § 9651 et seq.—have existed for some time in Delaware, but the courts have never had to determine whether or not they were intended to supplant the common law in a case such as this. A history of these statutes is found in Hearn v. Hearn, 39 Del. 427, 1 A.2d 585 (1937), but the discussion there is in the context of jurisdictional problems.

■ It appears to us that the better rule is that of the modern cases; we hold that the statutory scheme of 10 Del.C. § 9651 et seq., provides the only lawful method of regaining possession from a holdover tenant in a case such as this one. This holding does not mean that landlord and tenant must continue, throughout long litigation, a relationship which is at best probably un-

---

2. We note that the pre-trial stipulation in this case, formulated three months in advance of the trial, specifically referred to illegal eviction as one of the claims to be tried. It was not until trial, at the end of appellees' case, that appellants first raised objection to proceeding on this claim. Because this objection could be

viewed as a question of jurisdiction of the Court, we shall, for present purposes only, treat the motion as timely, although it was not.

3. It is appropriate to point out whether or not appellees were given notice to quit was one of the disputed facts below.

pleasant; our cases[4] clearly reveal that the statutes provide a prompt, summary proceeding designed to expedite the termination—or continuation—of the relationship.

Appellants point out that, even if the statutes provide the sole remedy for regaining possession, there is no provision contained therein by which the evicted tenant is entitled to sue for damages if they are not followed.

Insofar as it is necessary to construe the statute, this argument appears to be correct. Phillips v. Gunby, 31 Del. 462, 117 A. 383 (1921). A wrongfully-evicted tenant may sue under it only for possession; a landlord may sue a holding over tenant for possession and damages.[5]

However, the action below was not prosecuted under the statutes, but rather on the theory that appellees' rights were tortiously violated by appellants. The right violated may be defined as the right not to have peaceable possession interfered with except by lawful process, and violation of such right gives rise to the cause of action in tort. Cf. King v. Firm, 3 Utah 2d 419, 285 P.2d 1114 (1955); Anno.A.L.R.3d, *supra*.

## II.

Appellant also challenges the amount of the judgment; the jury awarded to Betty Ellen Little $2700 compensatory and $4000 punitive damages. It awarded to each of the children $150 compensatory and $1000 punitive damages. Upon consideration of the testimony, we find ample evidence to support the jury award of compensatory damages. The same can-

not be said about the punitive damages the jury awarded.

The instructions to the jury by the trial judge contained cautionary remarks about the amount of punitive damages that could be awarded; it appears that the jury disregarded these instructions and allowed itself to be moved by impermissible passion or prejudice. The judicial conscience of this Court is shocked by the disproportionate award of punitive damages of $6,000 as against the compensatory damages award of $3,000. "Punitive or exemplary damages are allowed not by way of recompense for injury, but as punishment to the tort feasor when his wrongful act was committed wilfully or wantonly." Riegel v. Aastad, Del.Supr., 272 A.2d 715 at 718 (1970). This is a tort action, and contract cases involving punitive awards are inapposite.

There is no formula that can be mathematically applied in a situation such as this. The amount of compensatory damages is of course one guideline; additionally, the tortious conduct which caused the injury for which the compensatory damages are awarded must be considered. The punitive damages should bear a relationship to this conduct, keeping always in mind that the compensatory damages have already made the victim "whole."

Appellants filed a timely motion—which was denied—for a remittitur of all or part of the punitive damages or a new trial; we hold that the motion should have been granted, and that the trial Judge abused his discretion by not doing so. Riegel v. Aastad, *supra*. It is our opinion, under all the facts and circumstances of this case, that the amount of punitive damages should not exceed the amount of compensatory damages allowed each appellee.

4. Bupp v. Kleitz, 11 Del.Ch. 346, 101 A. 878 (1917); Phillips v. Gunby, 31 Del. 462, 117 A. 383 (1921); Simms v. Schwartz, 15 Del.Ch. 195, 134 A. 99 (1926); Pefkaros v. Harman, 20 Del.Ch. 238, 174 A. 124 (1934); Knight v. Haley, 36 Del. 366, 176 A. 461 (1934); Hearn v.

Hearn, 39 Del. 427, 1 A.2d 585 (1937); Hickman v. Ryan, 43 Del. 431, 48 A.2d 517 (1946).

5. We explicitly do not pass on the constitutionality of the difference in remedy under the statute.

The judgment below is affirmed as to compensatory damages. It is remanded for a remittitur of $1300 as to Betty Ellen Little and $850 as to each child, or a new trial, at appellees' election.