**Robert Allen HOWERTON, Plaintiff, and Roxanna Howerton, Plaintiff-Appellant,**

v.

**Jess GABICA and Marjorie Gabica, Defendant-Appellees.**

No. 81–3619.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 8, 1982.

Decided May 10, 1983.

Jonathan Ellison, Lewiston, Idaho, for plaintiff-appellant.

Ned A. Cannon, Smith & Steiner, Lewiston, Idaho, for defendants-appellees.

Before KILKENNY, CHOY and FLETCHER, Circuit Judges.

FLETCHER, Circuit Judge:

The Howertons appeal the dismissal after trial of their section 1983 claim. It was dismissed on the ground that sufficient state action had not been shown. We have jurisdiction under 28 U.S.C. § 1291 (1976). We reverse and remand.

## I

In March 1977, the Howerton family leased from the Gabicas a trailerhouse, one of the few available rentals in the small town of Kooskia. The Howertons had financial difficulties and were unable to pay their August rent. A few days after Mrs. Howerton returned from the hospital following the birth of a fourth child, Mrs. Gabica went to the trailer to request that the Howertons look for a new residence. Mr. Howerton threatened to harm Mrs. Gabica, an older woman, should she return to the trailer. Mrs. Gabica then prepared a three-day eviction notice to serve on the Howertons; according to the Howertons this notice did not conform to the requirements of Idaho state law.[1] Fearing harm from Mr. Howerton, Mrs. Gabica requested a uniformed police officer of the Kooskia Police Department to serve the eviction notice. Although there was contradictory testimony as to who actually served the notice, it is undisputed that an officer was present at the time the notice was served.

The following day, August 23, the Howertons received an emergency grant from the Idaho City welfare department and tendered a check for August rent to Mrs. Gabica. Mrs. Gabica accepted the rent only through August 25 and told the Howertons they must still vacate by that date. On August 29, the Gabicas went to the Howerton premises and warned them that their water and power services would be disconnected if the Howertons did not leave immediately. They were accompanied by Randy Baldwin, a police officer, who was another tenant of the Gabicas. He was in uniform and on duty.

Sometime later, Officer Baldwin returned alone to the Howerton residence. According to the Howertons, he informed them that the Gabicas were using proper eviction procedures and advised them to quit the premises. He told them of other available rental units. The Howertons allege, however, that contrary to the police officer's assertion, the Gabicas had not complied with Idaho's unlawful detainer statute that requires a court order before a landlord can lawfully force a tenant to vacate. *See* Idaho Code §§ 6–301–6–323; 55–211 (1979); *Schlegel v. Hansen,* 98 Idaho 614, 616, 570 P.2d 292, 294 (1977) (citing *King v. Firm,* 3 Utah 2d 419, 425–26, 285 P.2d 1114, 1118 (1955)).

On September 1, Officer Baldwin, on duty and in a police car, accompanied the Gabicas when they disconnected the power services running to the trailerhouse. Mrs. Howerton testified that the police presence prevented them from objecting to the termination of their utilities, because "you don't argue with the police." Because of the lack of utilities, the Howertons were forced to stay with friends and neighbors, but occasionally returned at night to sleep at the trailerhouse. On one occasion the three policemen in Kooskia came to the

---

1. The notice gave the Howertons three days to vacate the mobile home, or "the sheriff or his deputy and the landlord will on the 4th day set all of your possessions and goods out in the street." The Howertons allege this notice was defective under Idaho Code § 6–303. That section states that a tenant is an unlawful detainer where he continues in possession "after default in the payment of rent, pursuant to the lease ..., and three (3) days' notice, in writing, requiring its payment, stating the amount which is due, or possession of the property, shall have been served upon him..." Idaho Code § 6–303(2). The Howertons contend the eviction notice must therefore state the amount of rent due and permit the tenants to pay that amount as an alternative to vacating the premises.

trailer in response to Mrs. Gabica's call reporting a family disturbance. The Howertons testified that at that time Officer Baldwin asked if they were still looking for a new rental.

On September 11, on the advice of their attorney, the Gabicas padlocked the door of the trailer with the Howertons' possessions within. The following day the Howertons commenced this action in district court. The Howertons subsequently settled with the Kooskia Police Department and its members. The police agreed to injunctive relief[2] and were dismissed from the action with prejudice. After a trial on August 4, 1981, the district court judge found (1) that Mr. Howerton had threatened violence to Mrs. Gabica; (2) that the police presence during the Gabica's actions was for the purpose of keeping the peace; and (3) that the police officers took no affirmative action to assist the Gabicas in evicting the Howertons but simply stood by to keep the peace. The district court therefore dismissed the action against the Gabicas as not involving sufficient state action to constitute action under color of state law for section 1983 purposes. The Howertons brought this timely appeal.

## II

In order to state a claim under 42 U.S.C. § 1983, the Howertons must show two es-sential elements: (1) that the defendants acted under color of state law; and (2) that the defendants caused them to be deprived of a right secured by the constitution and laws of the United States.[3] *Lugar v. Edmonson Oil Co. Inc.,* 457 U.S. 922, 102 S.Ct. 2744, 2751, 73 L.Ed.2d 482 (1982); *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 155, 98 S.Ct. 1729, 1732, 56 L.Ed.2d 185 (1978); *Harris v. City of Roseburg,* 664 F.2d 1121, 1125 (9th Cir.1981); *Ouzts v. Maryland National Insurance Co.,* 505 F.2d 547, 550 (9th Cir.1974) (en banc), *cert. denied,* 421 U.S. 949, 95 S.Ct. 1681, 44 L.Ed.2d 103 (1975). The Howertons contend that they were denied their Fourteenth Amendment rights when the landlords, with police aid, used self-help to evict them without providing proper notice and a prior judicial hearing. The trial judge dismissed the Howertons' complaint because he found the landlords did not act "under color of state law." It is this element of the section 1983 claim that we address.[4]

Action taken by private individuals may be "under color of state law" where there is "significant" state involvement in the action. *See, e.g., Lugar,* 102 S.Ct. at 2754; *Melara v. Kennedy,* 541 F.2d 802, 804 (9th Cir.1976); *Scott v. Eversole Mortuary,* 522 F.2d 1110, 1113 (9th Cir.1975), and cases cited therein at n. 6.[5] The Court has articu-

2. Specifically, the Kooskia Police Department agreed not to assist landlords in evicting tenants without a court order authorizing such assistance. They further agreed to protect tenants' right to privacy until such a court order, and not to intervene in landlord-tenant disputes unless an actual disturbance of the peace is involved.

3. 42 U.S.C. § 1983 (Supp. IV 1980) provides in part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

4. We intimate no view as to whether the Howertons met the second element of a § 1983 claim, that is, whether the Gabicas caused the Howertons to be deprived of a constitutional right because (a) the Gabicas' method of eviction arbitrarily denied the Howertons' procedural rights due under Idaho state law, or (b) the self-help repossession effectuated with police aid, regardless whether Idaho law permits it, violates the Howertons' due process rights.

5. The Court has recently noted that where a constitutional claim is directed against a private party, the "state action" necessary to show a violation of one's Fourteenth Amendment rights is not always synonymous with the "color of state law" requirements of § 1983. *Lugar,* 102 S.Ct. at 2754. Many cases, however, have treated the two as equivalent concepts. *See, e.g., Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970); *United States v. Price,* 383 U.S. 787, 794 n. 7, 86 S.Ct. 1152, 1156 n. 7, 16

lated a number of tests or factors to determine when state action is "significant." *See Lugar,* 102 S.Ct. at 2755. These include the governmental nexus test, *see Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 171–79, 92 S.Ct. 1965, 1970–74, 32 L.Ed.2d 627 (1972); *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974); *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 725, 81 S.Ct. 856, 861, 6 L.Ed.2d 45 (1961), the joint action test, *see Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 164, 98 S.Ct. 1729, 1737, 56 L.Ed.2d 185 (1978); *United States v. Price,* 383 U.S. 787, 794, 86 S.Ct. 1152, 1156, 16 L.Ed.2d 267 (1966), the public function test, *see Terry v. Adams,* 345 U.S. 461, 484, 73 S.Ct. 809, 820, 97 L.Ed. 1152 (1953) (Clark, J., concurring); *Marsh v. Alabama,* 326 U.S. 501, 507–08, 66 S.Ct. 276, 279, 90 L.Ed. 265 (1946), and the state compulsion test, *see Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 170, 90 S.Ct. 1598, 1615, 26 L.Ed.2d 142 (1970). One way the "joint action" test is satisfied is if a "conspiracy" is shown. *See Adickes,* 398 U.S. at 152, 90 S.Ct. at 1605 (quoting *Price,* 383 U.S. at 794, 86 S.Ct. at 1156). In *Adickes* and *Price,* the Court explained that this last test is met where "[p]rivate persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of [42 U.S.C. § 1983] .... It is enough that [the private party] is a willful participant in joint activity with the State or its agents," *Adickes'* 398 U.S. at 152, 90 S.Ct. at 1605; *Price,* 383 U.S. at 794, 86 S.Ct. at 1156; *Accord, Dennis v. Sparks,* 449 U.S. 24,

27–29, 101 S.Ct. 183, 186–87, 66 L.Ed.2d 185 (1980); *Sykes v. California,* 497 F.2d 197, 200 (9th Cir.1974).[6] While these factors are helpful in determining the significance of state involvement, "there is no specific formula for defining state action." *Melara v. Kennedy,* 541 F.2d 802, 805 (9th Cir.1976). The extent of state involvement remains a factual inquiry. "Only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance." *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961). *Accord, Life Insurance Co. of North America v. Reichardt,* 591 F.2d 499, 501 (9th Cir.1979); *Melara,* 541 F.2d at 804.

At some point, as police involvement becomes increasingly important, repossession by private individuals assumes the character of state action. This is explained in *Harris v. City of Roseburg,* 664 F.2d 1121, 1127 (9th Cir.1981):[7]

> [T]here may be a deprivation within the meaning of § 1983 not only when there has been an actual 'taking' of property by a police officer, but also when the officer assists in effectuating a repossession over the objection of a debtor or so intimidates a debtor as to cause him to refrain from exercising his legal right to resist a repossession. While mere acquiescence by the police to 'stand by in case of trouble' is insufficient to convert a repossession into state action, police intervention and aid in the repossession does constitute state action.

L.Ed.2d 267 (1966); *Arnold v. International Business Machines Corp.,* 637 F.2d 1350, 1355 n. 2 (9th Cir.1981). While we address only the "color of state law" issue, the cases on which we rely frequently use the "state action" terminology. We note that when the claim is that the private parties have jointly participated with a state official, ordinarily proof of the joint participation would establish both state action and action under color of state law. *See Adickes,* 398 U.S. at 152, 90 S.Ct. at 1605; *Price,* 383 U.S. at 794, 86 S.Ct. at 1156.

6. That the state official is no longer in the suit, or that the officer has acted unlawfully or outside the scope of his or her authority is no defense. *See Dennis v. Sparks,* 449 U.S. 24, 28 n. 4, 101 S.Ct. 183, 186 n. 4, 66 L.Ed.2d 185

(1980); *Adickes,* 398 U.S. at 152, 90 S.Ct. at 1605.

7. *Harris* concerned the question of when a police officer may be held liable under section 1983. The police officers in *Harris* came between the debtor and the disputed property as the creditor was preparing to take it away. One of the officers told Harris "to stand back and get away" and that if he "interfered either any further or in any way that [he] was going straight to jail." 664 F.2d at 1124, 1127. The court held that Harris's deposition raised factual questions about the extent of police intervention which would preclude summary judgment on the state action issue. *Id.* at 1127.

The point at which police involvement becomes significant state action was discussed by the Sixth Circuit in *United States v. Coleman,* 628 F.2d 961, 964 (6th Cir.1980). The court in that case found no state action where two police officers parked nearby while a creditor's agent repossessed a truck whose owner was absent. This was different, the court noted, from cases such as *Harris* in which police accompanied the repossessor to the debtor's residence, and together with the repossessor, confronted the debtor in order to effectuate a repossession. "The affirmative participation by the police sets those cases apart from the passive surveillance of the police here." 628 F.2d at 964 n. 1.[8] In *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 513 (5th Cir.), *cert. denied,* 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980) the Fifth Circuit also stated that "police intervention and aid" in the repossession by Chrysler's agents would make the private party a state actor. In that case, however, where the police had never met the repossessing agents, and were summoned on only a single occasion, the majority did not find the necessary police intervention and aid. *See id.* at 510 n. 4, 511, 513.

■ In order to determine whether the Gabicas acted under color of state law, the circumstances surrounding the private eviction must be examined in their totality. This case involves more than a single incident of police consent to "stand by" in case of trouble. Police were on the scene at each step of the eviction. Mr. Gabica testified that the police presence gave him the feeling he had the right to cut off the utilities. Moreover, the police officer ac-

tively intervened—he privately approached the Howertons and recommended that they leave the trailerhouse. An unsolicited visit by a police officer is hardly passive, or "merely standing by." There is also some indication that on another occasion, when Officer Baldwin responded to a call from Mrs. Gabica reporting a domestic disturbance at the Howerton residence, he inquired whether the tenants had found a new rental. The actions of Officer Baldwin created an appearance that the police sanctioned the eviction. We conclude that the trial judge clearly erred when he found that the Kooskia police took "no affirmative action" to assist the eviction.

The Supreme Court in a 1983 action has affirmed a judgment against a private party where state agents seized the plaintiff's property, the agents acting pursuant to statute upon the private party's *ex parte* application. *E.g., Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). *See also Lugar v. Edmunson Oil Co.,* 102 S.Ct. at 2752. On the other hand, a private repossession pursuant to a state statutory provision is not state action. *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 164–66, 98 S.Ct. 1729, 1737–38, 56 L.Ed.2d 185 (1978). In this case, the Howertons claim the Gabicas chose a middle road, using the police to facilitate an *illegal* repossession. If true, we think this constituted state action.[9]

■ Because of its erroneous finding that there was no affirmative action by the police, the trial court did not reach the question whether the Gabicas deliberately used the police to carry out the challenged eviction. The record, however, is replete with evidence that the Gabicas deliberately

---

8. The *Coleman* court specifically distinguished *Walker v. Walthall,* 121 Ariz. 121, 588 P.2d 863 (1978), and *Stone Machinery v. Kessler,* 1 Wash.App. 750, 463 P.2d 651 (1970), on this basis.

9. In *Lugar,* the Court affirmed the dismissal of the portion of the plaintiff's section 1983 complaint that challenged "unlawful" use of state prejudgment attachment procedures, even though the procedures themselves required the involvement of the county clerk and the sheriff. 102 S.Ct. at 2747, 2756. The Court ruled that this portion of the complaint did not challenge state action, because the fact "[t]hat respon-

dents invoked the [attachment] statute without grounds to do so could in no way be attributed to a state rule or decision." *Id.* 102 S.Ct. at 2756.

The present case is distinguishable, because the Howertons in this case allege that the Gabicas invoked the authority of specific state officials, the Kooskia police, to put the weight of the state behind their private decision to evict. The case therefore falls within the "abuse of authority" doctrine of *Adickes, Price,* and *Monroe v. Pape* that the Court explicitly recognized in *Lugar. See* 102 S.Ct. at 2756.

cloaked themselves with the authority of the state in effecting repossession of the trailer premises. A single request for the police to perform their peace-keeping functions may not be sufficient to make a landlord a "joint actor" with the state for section 1983 purposes. *See Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 510–13 (5th Cir.), *cert. denied,* 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980). But the Gabicas repeatedly requested aid by the police to effect the eviction, and the police intervened at every step. We must conclude they have proceeded under color of state law. *See Harris v. City of Roseburg,* 664 F.2d 1121, 1127 (9th Cir.1981).[10]

The judgment of the district court is REVERSED and the case is REMANDED for further proceedings.

---

**10.** We realize the Gabicas may have believed they were acting within their rights. But there is no good faith immunity under section 1983 for private parties who act under color of state law to deprive an individual of his or her constitutional rights. *See Lugar,* 102 S.Ct. at 2757 n. 23 (suggesting that compliance with statute might be raised as an affirmative defense); *Stypmann v. City and Cty. of San Francisco,* 557 F.2d 1338, 1341–44 (9th Cir.1977) (private towing company held liable under section 1983 although it worked only at direction of police pursuant to municipal ordinance).

However, we note that courts have sometimes awarded only nominal damages for the type of injury that the Howertons suffered. *See, e.g., King v. Firm,* 3 Utah 2d 419, 428, 285 P.2d 1114, 1119 (1955).