**Patricia GROOM, a single woman, Plaintiff,**

v.

**SAFEWAY, INC., a Delaware corporation; Michael Hori, in his official and individual capacity, and Jane Doe Hori, husband and wife, and the marital community composed thereof, Defendants.**

**No. C96–0417D.**

United States District Court, W.D. Washington.

July 18, 1997.

Arnold J. Barer, Law Offices of Arnold Barer, Seattle, WA, Elena Luisa Garella, Seattle, WA, for Patricia Groom.

Lucy Isaki, Bogle & Gates P.L.L.C., Seattle, WA, for Safeway Inc.

Lucy Isaki, Bogle & Gates P.L.L.C., Seattle, WA, Theron A. Buck, Stafford, Frey & Cooper, Seattle, WA, for Michael Hori, Jane Doe Hori.

## ORDER RE: DEFENDANT SAFEWAY'S POST–TRIAL MOTIONS

DIMMICK, Chief Judge.

THIS MATTER comes before the Court on Safeway's post-trial motion for (1) an order dismissing Plaintiff's claims or, alternatively, granting a new trial; or (2) an order vacating or reducing the punitive damage award against Safeway or, alternatively, granting a new trial on the issue of damages. The Court denies the motion for a judgment dismissing Plaintiff's claims and grants in part the motion regarding damages.

### I.

Plaintiff Patricia Groom brought this action against Safeway, Inc., and Seattle Police Officer Michael Hori asserting violations of 42 U.S.C. § 1983 and various state law claims. At the close of Plaintiff's case, Safeway moved for judgment as a matter of law on the § 1983 claims on the ground that Safeway did not act under color of state law. The Court came to the opposite conclusion, holding Safeway potentially liable under § 1983.[1] At the close of trial, the Court instructed the jury that both Safeway and Hori had acted under color of state law. The jury returned a verdict in favor of Plaintiff, awarding compensatory damages in the amount of $2,500 and $5,000 against Hori and Safeway, respectively. The jury also awarded punitive damages in the amount of $2,500 and $750,000 against Hori and Safeway, respectively.

The facts as developed at trial are as follows: Plaintiff and a friend were in a Safeway store shopping when the manager of the seafood section, Angel Vargas, noticed that Plaintiff, who did not have a shopping cart with her, was no longer carrying a bag of prawns that she had just ordered. Vargas suspected that Plaintiff might have secreted the prawns somewhere in an attempt to shoplift them. In reality, Plaintiff and her friend had been sharing a shopping cart, and Plaintiff had dropped the prawns in the cart on her way to a different part of the store.

Officer Hori was an off-duty police officer working for Safeway that day. He wore a Seattle Police Department uniform; he was armed; and Safeway was paying for his time. Vargas notified Hori that Plaintiff might have been attempting to shoplift and asked Hori to watch her. Eventually Hori approached Plaintiff and asked to look in the purse she was carrying.

Plaintiff suffers from a serious illness that makes it difficult for her to breathe and requires an array of medication. Plaintiff's purse held her medication, and she refused to allow Hori to search the purse. Hori persisted; Plaintiff refused; and the confrontation escalated. Eventually Hori handcuffed Plaintiff and walked her to the front of the store, where Plaintiff ended up on the floor, still in handcuffs. The store's manager, Dennis Johnson, was off duty but happened to be in the store, and he came over to investigate. Plaintiff was released when her friend came to the front of the store and showed Hori and Johnson the prawns.

The jury found that Hori did not arrest Plaintiff or use excessive force in the course of an arrest but that he did subject Plaintiff to an unreasonable detention and search. The jury also found that Safeway had caused

---

1. Safeway suggests that this *"sua sponte"* order before Defendants had presented their case was improper. There are several responses to this. First, the Court did not make the order *sua sponte.* The issue of whether Safeway acted under color of state law was presented in the trial briefs, the pretrial order, Plaintiff's proposed jury instructions, and orally in court. The fact that Plaintiff did not file a written cross-motion in response to Safeway's motion does not make the Court's order *sua sponte,* and it certainly was not without warning. Second, as a practical matter, the order had no effect until the end of the trial, when the Court instructed the jury that Safeway had acted under color of state law; before that time, the Court was free to amend its preliminary order. Finally, because the facts upon which the Court based its conclusion were not in dispute, and because the Court assumed that all of the facts as described in Safeway's motion for judgement as a matter of law were true, there were no evidentiary issues material to the Court's decision; thus, Safeway effectively had been "fully heard on [the] issue." *See* Fed.R.Civ.P. 50(a)(1).

Plaintiff to be subjected to a deprivation of her rights. Plaintiff's theory for Safeway's liability was that it had been reckless in failing to provide training to the police officers it hired on how to deal with store customers, instead giving Hori, as a Safeway employee, unlimited discretion. There was evidence to support Plaintiff's theory.

## II.

Safeway moves for an order dismissing Plaintiff's claims on the following grounds: (1) the Court erred in ruling that Safeway acted under color of state law, and Safeway did not act under color of state law; (2) Safeway's actions were not the proximate cause of Plaintiff's injuries; and (3) the Court erred in failing to instruct the jury that Safeway could not be held vicariously liable for Hori's conduct. The Court reaffirms its preliminary order and holds that Safeway did act under color of state law. The Court further declines to upset the jury's finding that Safeway's actions were a proximate cause of Plaintiff's injuries and finds that the jury instructions were correct.

## A.

The Court affirms its earlier decision that Safeway acted under color of state law. The cases that Safeway has submitted to the contrary simply are not on point. One group of cases supports the proposition that, where a private entity detains a shoplifter and then seeks the assistance of on-duty police officers, the private entity does not act under color of state law unless the judgment of the police officers is subordinated to that of the private entity, such as through an arrangement whereby the police will arrest anyone that the private entity accuses of shoplifting, see, e.g., Cruz v. Donnelly, 727 F.2d 79, 81 (3rd Cir.1984); Murray v. Wal–Mart, Inc., 874 F.2d 555, 558–59 (8th Cir.1989); Grame-

nos v. Jewel Companies, Inc., 797 F.2d 432, 435 (7th Cir.1986); Lusby v. T.G. & Y. Stores, Inc., 749 F.2d 1423, 1433 (10th Cir. 1984), vacated on other grounds, 474 U.S. 805, 106 S.Ct. 40, 88 L.Ed.2d 33 (1985), reaff'd, 796 F.2d 1307 (1986), but the fact that officer Hori was in an employment relationship with Safeway makes this case fundamentally different. Another group of cases cited by Plaintiff holds that an employer is not vicariously liable for § 1983 violations of an employee, see, e.g., Sanders v. Sears, Roebuck & Co., 984 F.2d 972, 975–76 (8th Cir. 1993); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir.1989); Draeger v. Grand Central, Inc., 504 F.2d 142, 145 (10th Cir.1974), but the Court recognized in its preliminary order the rule as agreed by the parties that the doctrine of respondeat superior does not apply in a § 1983 action.[2]

The Court is aware of no cases addressing the situation presented here.[3] Thus, the Court begins with the widely cited rule that a private entity acts under color of state law where it is a "willful participant in joint action with the State or its agents." Dennis v. Sparks, 449 U.S. 24, 27, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152, 90 S.Ct. 1598, 1605–06, 26 L.Ed.2d 142 (1970). Of course, variations on the standard will appear in cases involving various fact patterns. In fact, Dennis and Adickes may be considered among "joint action" or "conspiracy" class of cases in the more general and various body of case law on the question of when a private entity acts under color of state law. Cf. Lugar v. Edmondson Oil Co., 457 U.S. 922, 937–39, 102 S.Ct. 2744, 2753–55, 73 L.Ed.2d 482 (1982) (discussing the various theories under which a private entity can be held to be a "state actor"); Howerton v. Gabica, 708 F.2d 380, 382–83 (9th Cir.1983) (conducting a similar analysis regarding when a private entity acts under color of state law).

---

**2.** That the Court nonetheless finds the employment relationship significant to the question of whether Safeway acted under color of state law apparently suggests to Safeway that the Court is being disingenuous, but the distinction should be clear: Safeway may act under color of state law by virtue of the employment relationship and yet be held liable only for its actions, not officer Hori's.

**3.** Although Traver v. Meshriy, 627 F.2d 934 (9th Cir.1980), involved a police officer employed by a private entity, id. at 937, the court did not decide whether the private entity acted under color of state law, id at 938.

In one sense, the facts of the instant case satisfy the standard in the joint action cases, because the employment relationship makes anything that Safeway does in connection with Hori's performance of his duties more "joint." Although Safeway argues that joint action requires an actual agreement to violate a person's rights, this must be understood to mean an agreement to engage in the act that constitutes the violation. To the extent that the facts of this case do not meet the standard as described in the conspiracy cases, the Court again notes that, like the shoplifter cases discussed previously, *Dennis* and *Adickes* are not on point with the instant case, and a conspiracy is not the only way to satisfy the color-of-state-law requirement.

Perhaps most relevant to the instant case are the cases such as *Howerton,* in which police officers are enlisted to assist a private entity in performing the entity's task. *See* 708 F.2d at 381–82 (involving landlords who attempted to evict tenants accompanied by a uniformed, on-duty police officer). In *Howerton,* the court stated the rule as follows: "Action taken by private individuals may be 'under color of state law' where there is 'significant' state involvement in the action." *Id.* at 382 (citing *Lugar,* 457 U.S. at 937, 102 S.Ct. at 2753–54). As the court noted, there are many ways of establishing "significant"

state involvement. *See id.* at 382–83. Because the landlord defendants in *Howerton* had "deliberately cloaked themselves with the authority of the state," the court found that they had acted under color of state law. *See id.* at 384–85.

■ In the instant case, Safeway did more than cloak itself with the authority of the state: it hired an instrument of the state's power. Officer Hori, his uniform, his badge, and his gun were all hired to serve Safeway's goal of deterring theft in its stores. Although Hori acted in his capacity as a police officer, he did so on Safeway's time. Safeway stresses that the way in which Hori performed his duties was not subject to Safeway's control, but Hori nonetheless performed those duties in Safeway's store and on Safeway's behalf; presumably he could not have wandered out of the store to patrol the surrounding neighborhood. Thus, the employment relationship gives the private entity and the state agent an overlapping identity and interest and sufficiently involves the state in the relevant actions of the private entity to bring those actions under color of state law.

This is different than making Safeway liable for Hori's actions on a *respondeat superior* theory,[4] and therefore it does not matter

4. Although the parties have all assumed that the rule against vicarious liability under § 1983 should apply in this case, and therefore the Court was never presented with the issue, the issue seems far from settled. The rule has arisen most often in the usual § 1983 context, in which the question has been whether a *government or public* employer is vicariously liable for the actions of its employees. The cases cited by the parties provide no binding authority and little persuasive authority for the proposition that a private entity cannot be vicariously liable for the actions of its employees if those actions violate § 1983. *See Sanders v. Sears Roebuck & Co.,* 984 F.2d 972, 975–76 (8th Cir.1993) (applying the rule to a private entity but relying on *Monell v. Dept. of Soc. Servs. of New York City,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978), which addressed the liability of a public entity); *Taylor v. List,* 880 F.2d 1040 (9th Cir.1989) (addressing the liability of a public entity); *Draeger v. Grand Central, Inc.,* 504 F.2d 142, 145 (10th Cir.1974) (acknowledging that, although there was "very little case law" on the subject, it was applying the law from the public-entity context to a private entity as a matter of policy).

Other case law suggests that a private employer can be vicariously liable under § 1983. For instance, the *Adickes* case and others like it implicitly assume that a private employer is liable for the actions of its employees by allowing the case to proceed against the employer without ever discussing vicarious liability. In addition, none of the reasons for limiting a public employer's liability are present when the defendant is a private employer. *See Monell v. Dept. of Soc. Servs. of New York City,* 436 U.S. 658, 690–95, 98 S.Ct. 2018, 2035–38, 56 L.Ed.2d 611 (1978) (discussing the reasons for its holding that the public entities are not vicariously liable for the actions of their employees); cf. *Richardson v. McKnight,* ___ U.S. ___, ___ ___, 117 S.Ct. 2100, 2104–08, 138 L.Ed.2d 540 (1997) (discussing the historical and policy reasons behind its holding that prison guards employed by a private entity are not entitled to qualified immunity). Furthermore, a policy of shielding private employers from liability or acts of their employees under § 1983 while subjecting them to liability for their employees' state-law torts makes no sense.

This Court sees no reason why the private employer of a police officer should not be vicariously liable for the officer's acts committed with-

whether Hori was an employee or an independent contractor. The Court does not hold that Safeway is automatically liable for every action that Hori took. Thus, it is possible that Hori's actions could have caused Plaintiff to be subjected to a deprivation of her civil rights while Safeway's actions did not; the Court merely holds that, whatever Safeway did, it did under color of state law.

## B.

■ What did Safeway do? Safeway argues that Plaintiff presented no evidence that Safeway's actions proximately caused her to be deprived of her civil rights. Insofar as Safeway here moves for a judgment as a matter of law on the issue of causation, the motion is untimely for reasons discussed below. *See infra* Part III.A. The issue is worth addressing, however. As the Court instructed the jury, a "person or corporation 'causes' another 'to be subjected' to the deprivation of a constitutional right ... by direct personal participation in the deprivation, or by setting in motion a series of acts by others which the person knows or reasonably should know would cause others to violate the constitutional right." Instruction No. 20; *see also Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir.1991); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir.1978).[5] Plaintiff's only argument was that Safeway caused her to be

subjected to a deprivation of her constitutional rights through its hiring and training policies, or the lack thereof, and Plaintiff presented evidence based on which the jury could have agreed.

## C.

■ Finally, Safeway argues that the only explanation for the jury's verdict is that "the jury found liability based on *respondeat superior*," Def. Safeway's Mem. Re: Post Trial Motions at 15, and that the Court should have instructed the jury that Safeway was not vicariously liable for its employees' actions. This argument mirrors Safeway's causation argument above: because there was no evidence of Safeway's liability according to Plaintiff's theory, the jury could only have found Safeway liable vicariously for its employees' actions, and therefore the Court should have instructed them not to do so. As discussed above, Safeway's premise is wrong. Plaintiff did not argue that Safeway could be vicariously liable, and the jury was not so instructed. It was not necessary to instruct the jury on all the ways in which Safeway was not liable.

■ Safeway further argues that instructing the jury on the elements of Plaintiff's claim in terms of officer Hori's actions, *see* Court's Jury Instructions 15–18 (defining an unlawful arrest, lawful detention without

---

in the scope of his employment. Similarly, the Court sees not reason why the acts of Safeway's regular employees, such as Vargas and Johnson, should not be attributable to Safeway, both as willing participation in joint activity with Hori and as potential violations of § 1983 themselves.

**5.** The pages cited in both *Larez* and *Duffy* concern the individual capacity liability of a public actor who was not directly involved in the acts causing the violation; the standard that they apply is to be distinguished from the standard for liability of a public entity itself, referred to as municipal or official-capacity liability, which holds a public entity liable only if its policies or customs were a cause of the § 1983 violation. *See Larez*, 946 F.2d at 646–48. The distinction between official-capacity/municipal and individual-capacity actions that arises in the context in which a public entity is being sued is yet another illustration of how case law from that context does not fit where the defendant is a private corporation. Should Safeway have been held liable in its "individual" or its "official" capaci-

ty? It would seem clear that Safeway, as a private employer, has no "official"-capacity, or "municipal," liability, and yet the "rule" against holding Safeway vicariously liable for its employee's actions is borrowed from the official-capacity/municipal liability context, in which a plaintiff seeks to hold a public entity liable for the actions of its employees. *See supra* note 4. Just as Safeway should not receive the benefit of the higher standard for municipal liability, so should it not be protected from vicarious liability for the acts of its employees.

In any event, Safeway did not object to the Court's causation instruction, and Plaintiff's theory could have supported a finding of liability under either the individual-capacity standard, on which the jury was instructed, or under the standard for official-capacity/municipal liability, which requires a policy or custom that causes the harm. *Cf. Davis v. Mason County*, 927 F.2d 1473, 1482–83 (9th Cir.1991) (finding that a failure to train satisfied the municipal liability standard as a matter of law).

probable cause, reasonable and unreasonable searches, and excessive force), necessarily led the jury to find Safeway liable on a *respondeat superior* theory. But the direct acts depriving Plaintiff of her civil rights were, in fact, those of Hori. The question put to the jury was whether Safeway also "performed acts" that "cause[d plaintiff] to be subjected to" a deprivation of her civil rights. *See* Instructions No. 13, 14, 20.[6] The jury was further instructed to "decide each case as to each party separately." Instruction No. 11. Considering the instructions as a whole, the jury was properly instructed on the separate basis of Safeway's liability.

### III.

Safeway asks the Court to strike or reduce the jury's punitive damage award or, alternatively, order a new trial.

### A.

■ Safeway's request that the Court strike the punitive damage award appears to be a motion for judgment as a matter of law, which Safeway has waived its right to bring with respect to damages. The jury was instructed that punitive damages were allowed "only if [the jury found] that a specific defendant's conduct was malicious, or in reckless disregard of plaintiff's rights." Instruction No. 24. The Court further instructed the jury that "[c]onduct is in reckless disregard of plaintiff's rights if, under the circumstances, it reflects complete indifference to the safety and rights of others." *Id.* Plaintiff argues that, because Seattle police officers were not trained to handle shoplifting and

Safeway did not train them to do so, Safeway's actions met this standard. Safeway argues that it was not unreasonable, much less culpable or in "complete disregard" of Plaintiff's rights, for Safeway to assume that Seattle police officers knew the difference between a lawful detention and an unlawful detention.

Even if the Court were to agree with Safeway, however, a party must ask for judgment as a matter of law on an issue before the case is submitted to the jury in order to raise it after the jury has rendered a verdict. *See* Fed.R.Civ.P. 50(a)(2) ("Motions for judgment as a matter of law may be made at any time *before submission of the case to the jury* . . . . [and] shall specify . . . the law and the facts on which the moving party is entitled to the judgment.") (emphasis added); Fed.R.Civ.P. 50(b) (providing that, if the court does not grant the motion, it is "considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion"). Thus, the Court sees no procedural basis for making a motion for judgment as a matter of law on the punitive damage issue at this stage and no other way to characterize Safeway's argument that there is no evidence supporting an award of punitive damages.[7]

### B.

Although Safeway may not seek judgment as a matter of law on the issue of punitive damages, the Court does find that a significant reduction in the punitive damage award against Safeway is warranted. The Supreme Court has confirmed that "unlimited jury

---

6. Instruction No. 13 quoted 42 U.S.C. § 1983: "Every person who, under color of [law] subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured."

   Instruction No. 20 provided as follows:
      A person or corporation "subjects" another to the deprivation of a constitutional right, within the meaning of Section 1983, if he or it does an affirmative act, participates in another's affirmative acts, or does not perform an act which he or it is legally required to do that causes the deprivation.
      A person or corporation "causes" another "to be subjected" to the deprivation of a con-

stitutional right, within the meaning of Section 1983, by direct personal participation in the deprivation, or by setting in motion a series of acts by others which the person knows or reasonably should know would cause others to violate the constitutional right.
   Instruction No. 14 required Plaintiff to prove by a preponderance of the evidence "[t]hat the defendants performed acts which operated to deprive the plaintiff of one or more of [her] federal Constitutional rights, *as defined and explained in these instructions.*" (emphasis added).

7. The same is true of Safeway's argument that there was no evidence presented that Safeway's actions caused Plaintiff's injury. *See supra* Part II.B.

discretion—or unlimited judicial discretion for that matter—in the fixing of punitive damages may invite extreme results that" raise due process concerns. *See Pacific Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 18, 111 S.Ct. 1032, 1043, 113 L.Ed.2d 1 (1991). Although the Court in *Haslip* was not willing to draw a bright line between constitutional and unconstitutional punitive damage awards or procedures for reviewing such awards, it noted "that general concerns of reasonableness and adequate guidance from the court when the case is tried to a jury properly enter into the constitutional calculus." *Id.*

In *Morgan v. Woessner,* 997 F.2d 1244, 1255–58 (9th Cir.1993), the Ninth Circuit established three stages of procedural protection from unreasonable punitive damage awards. The first stage consists of proper jury instructions describing the purpose of punitive damages as being to punish and deter, not to compensate the plaintiff. *Id.* at 1256. This Court used the Ninth Circuit pattern jury instruction for punitive damages, which states that their purpose is to punish and deter, and Safeway does not argue that the instruction was inadequate.

The third stage consists of appellate review. The appeals court will first look to see that the defendant was afforded the first two stages of protection and then engage in a substantive review to " 'make[ ] certain that the punitive damages are reasonable in their amount and rational in light of their purpose to punish what has occurred and to deter its repetition.' " *Id.* at 1257–58 (quoting *Haslip,* 499 U.S. at 17, 111 S.Ct. at 1043).

The second stage is of importance here: it consists of the trial court's review of the award, after which the court must record its reasons for upholding or altering it. *Id* at 1257. "The task of the court is a comparison between the amount of punitive damages actually assessed and a figure derived from the facts of the case at hand. To arrive at this figure, the Court should look to awards in similar cases and to its own experience." *Id.* In addition, the Court may look at the following "*Hammond* factors":

(a) whether there is a reasonable relationship between the punitive damages award and the harm likely to result from the defendant's conduct as well as the harm that actually occurred; (b) the degree of reprehensibility of the defendant's conduct, duration of that conduct, the defendant's awareness, any concealment, and the existence and frequency of similar past conduct; (c) the profitability to the defendant of the wrongful conduct and the desirability of removing that profit and of having the defendant also sustain a loss; (d) the "financial position" of the defendant; (e) all the costs of the litigation; (f) the imposition of criminal sanctions on the defendant for its conduct, these to be taken in mitigation; and (g) the existence of other civil awards against the defendant for the same conduct, these also to be taken in mitigation. *Haslip,* 499 U.S. at 17, 111 S.Ct. at 1045.

*Id.* at 1257 n.14.

■ Since *Morgan,* the Supreme Court has elaborated on the factors relevant to determining whether the size of a punitive damage award violates due process. *See BMW of North America, Inc. v. Gore,* 517 U.S. ——, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). A punitive damage award may be unreasonable, and therefore in violation of the Due Process Clause, if it is "grossly excessive" in relation to the goals of punishment and deterrence. 517 U.S. at ——, 116 S.Ct. at 1595. "Perhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct[, or] . . . the enormity of [the defendant's] offense." *Id.* at ——, 116 S.Ct. at 1599 (internal quotation marks omitted). For instance, violent offenses are more reprehensible than non-violent ones; trickery and deceit are more reprehensible than negligence; offenses causing physical damage may be more reprehensible than those causing purely economic damages. *See id.*

■ "The second and perhaps most commonly cited indicium of an unreasonable or excessive punitive damages award is its ratio to the actual harm inflicted on the plaintiff[:] . . . exemplary damages must bear a reasonable relationship to compensatory damages . . . ." *Id.* at ——, 116 S.Ct. at 1601

(internal quotation marks omitted). In this regard, the Court also may consider the harm likely to result from the conduct in addition to the harm that has occurred already. *See id.* at ——, 116 S.Ct. at 1602; *TXO Prod. Corp. v. Alliance Resources Corp.,* 509 U.S. 443, 460, 113 S.Ct. 2711, 2721–22, 125 L.Ed.2d 366 (1993). While a ratio of 4–to–1 was "close to the line" but did not "cross the line" in *Haslip,* a fraud case, and a 10–to–1 ratio was upheld in *TXO,*[8] the "breathtaking" 500–to–1 ratio in *Gore* surely "raise[d] a suspicious judicial eyebrow." *See Gore,* 517 U.S. at —— – ——, 116 S.Ct. at 1602–03 (internal quotation marks omitted).[9] The *Gore* Court reaffirmed the statement in *Haslip,* however, that there is no mathematical bright line for determining a reasonable award. *Id.* at ——, 116 S.Ct. at 1602.

A third indicium of reasonableness comes from comparing the punitive damages award with the civil or criminal penalties that could be imposed for comparable conduct. *Id.* at ——, 116 S.Ct. at 1603. In addition, the Court in *Gore* suggested that, in considering what is necessary to deter future misconduct, a court should consider the effectiveness of less drastic remedies. *Id.* "In the absence of a history of noncompliance ..., there is no basis for assuming that a more modest sanction [might] not [be] sufficient to motivate full compliance" with the standard of behavior imposed on the defendant. *Id.*

This Court finds that the considerations discussed above require a significant reduction of the punitive damage award

made by the jury. Most importantly, Safeway's conduct was not reprehensible. According to Plaintiff, Safeway's wrongful conduct was assuming that Seattle police officers knew how to avoid unreasonable searches and seizures.[10] Such conduct does not cry out for punishment or deterrence, and there was no evidence presented of similar past conduct. To the extent that deterrence is required, Safeway's being alerted to the possibility of future liability under § 1983 is deterrent enough.[11]

As for the ratio of the punitive damages award to the actual harm inflicted, the punitive damages against Safeway were 150 times greater than the compensatory damage for which Safeway was responsible. There are simply no facts justifying such an extreme ratio. Although a defendant's wealth may be considered, it is the only consideration tending to justify the large award in this case. The Supreme Court has suggested that a ratio of 10–to–1 might be close to the limit; this Court finds that a ratio of 10–to–1 is certainly the limit in the instant case.

Finally, the fact that apparently there is no law imposing civil or criminal penalties for comparable conduct strongly suggests that an enormous punitive damage award is not warranted here. Thus, all of the factors emphasized in *Gore* and all but one of the *Hammond* factors go against a large punitive damage award. Instead of $750,000, the Court finds that $50,000 is reasonable.

8. TXO involved a claim for slander of title. 125 L.Ed.2d at 372. The 10-to-1 figure was loosely based on an estimate of the potential harm resulting from the conduct, which may have been in the millions of dollars, *see id.* at 381; considering that and the fact that the jury could have found the defendant's conduct to be "malicious and fraudulent," the Court upheld the award, *see id.* at 382, even though the actual damages were only $19,000, or 1/526 of the punitive damages, *id.* at 372, 376.

9. On remand, the Alabama Supreme Court reduced the punitive damage award to $50,000, making the ratio 12.5-to-1. *BMW of North America, Inc. v. Gore,* 72 Antitrust & Trade Reg. Rep. (BNA) 510, 1996 WL 233910 (Ala. May 7, 1997).

10. Plaintiff's central argument is that police are not normally fit or trained for retail store duty, but it is important to remember that Safeway

and Hori are liable—and can only be liable— under § 1983 because Hori's conduct was unconstitutional, not because it was impolite. Thus, Safeway would not be here if Hori had respected Plaintiff's constitutional rights, and Safeway's mistake was assuming that he knew how to do so.

11. There was evidence presented that Plaintiff's primary reason for bringing this action was to "make a statement," and the prominent coverage that the verdict received in the newspaper has helped her to do just that. Probably no one heard the statement more clearly than Safeway and other private employers of Seattle police officers, and what they heard is significant without the enormous punitive damage award.

### C.

Although Safeway's motion for a new trial is moot in light of the foregoing conclusions, Seventh Amendment concerns require giving Plaintiff the option of a new trial on the issue of damages instead of accepting the Court's remittitur. *See Morgan*, 997 F.2d at 1258–59.

### IV.

For the foregoing reasons, Safeway's motion to dismiss the claims against it is DE-NIED, and Safeway's motion regarding punitive damages is GRANTED in part. Plaintiff has twenty days from the date of this order to notify the Court of her decision either to accept a remittitur reducing her punitive damage award to $50,000 or to retry the punitive damage issue.[12]

---

**12.** Plaintiff's request for attorney's fees pursuant to 42 U.S.C. § 1988 are the subject of a separate order.