Gene CAHILL, on behalf of L.C., a minor, Appellant

v.

LIVE NATION; Hanover Township, Washington County Pennsylvania; Chief Geho; Officer Zoller; Jesse Haschak.

No. 11–4056.

United States Court of Appeals, Third Circuit.

Argued: Dec. 13, 2012.

Opinion Filed: Jan. 31, 2013.

Timothy P. O'Brien, Esq., Pittsburgh, PA, for Appellant.

Brennan Hart, Esq., Jeanette H. Ho, Esq., Pietragallo, Gordon, Alfano, Bosick & Raspanti, Mark A. Martini, Esq., Daniel L. Rivetti, Esq., Robb, Leonard & Mulvihill, Pittsburgh, PA, for Appellee.

Before: GREENAWAY, JR., GREENBERG, and COWEN, Circuit Judges.

## OPINION

GREENAWAY, JR., Circuit Judge.

Appellant Gene Cahill ("Cahill") brought a complaint against Appellee Live Nation, alleging violations of constitutional rights under 42 U.S.C. § 1983 and two causes of action pursuant to Pennsylvania state law. The District Court granted summary judgment in favor of Live Nation as to all of Appellant's claims. Appellant now appeals the District Court's grant of summary judgment. For the reasons that follow, we will affirm.

## I. BACKGROUND

Because we write primarily for the benefit of the parties, we recount only the essential facts. Live Nation is a private corporation that operates the Post–Gazette Pavilion ("Pavilion"), a live entertainment venue, in Pennsylvania. On the afternoon of July 29, 2008, Appellant Cahill's daughter, Lindsay Cahill ("Ms. Cahill"), attended the annual Warped Tour concert at the Pavilion. At the time, Ms. Cahill was sixteen years old. That same afternoon, Officers Julius Zoller ("Zoller") and Jesse Haschak ("Haschak") of the Hanover Township Police Department were working at the concert, directing traffic. The officers were working at the Pavilion pursuant to a contract between Hanover Township and Live Nation, by which Hanover Township agreed to provide part-time police officers to work at the Pavilion for concert events.[1]

Following the concert, Ms. Cahill waited for her cousin to pick her up on the side of a ramp leading from the Pavilion to a state highway. Sometime thereafter, Ms. Cahill saw her cousin's car approaching her location. There were three lanes between where Ms. Cahill was standing and the lane in which her cousin's car was traveling. Ms. Cahill crossed the first two lanes, and then entered the third lane, which was designated as a "fire lane."

The parties contest what events occurred next. Because we are reviewing a motion for summary judgment, we adopt the version of the facts most favorable to Appellant. *See Mandel v. M & Q Packag-*

---

1. The contract stated that all police officers who were assigned to work at the Pavilion were required to have the certification, training and experience required of police officers by Hanover Township and the Commonwealth of Pennsylvania. Under the terms of the contract, the police officers who were assigned to the Pavilion were responsible for traffic and crowd control and for keeping the peace. The contract also provided that Live Nation would reimburse Hanover Township for the use of the officers by paying an hourly rate per officer and provide the officers with equipment.

*ing Corp.*, 706 F.3d 157, 164 (3d Cir.2013). According to Ms. Cahill, as she crossed the lanes to enter the car, she heard a police officer (later confirmed to be Zoller) yelling at her to "get out of the fire lane." (App.184.) She then immediately entered the vehicle that had arrived to pick her up. At that point, Zoller "approached, pounded on the windows, and forcibly removed her from the vehicle before she had a chance to exit on her own." *Cahill v. Live Nation*, 866 F.Supp.2d 503, 507 (W.D.Pa. 2011). Ms. Cahill alleges that the officers acted "very violently" toward her and put her "in a choke hold." (App.632.)

Ms. Cahill was detained by Officers Zoller and Haschak and was charged with disorderly conduct. The charges were subsequently dropped.

On November 11, 2008, Appellant Cahill, on behalf of Ms. Cahill, filed a civil complaint against five defendants: Live Nation, Hanover Township, Police Chief James Geho ("Chief Geho"), Zoller, and Haschak. The Complaint alleged three claims against Appellee Live Nation: (1) a § 1983 claim alleging a violation of Ms. Cahill's Substantive Due Process rights under the Fourteenth Amendment, (2) a cause of action for vicarious liability under Pennsylvania common law, and (3) a cause of action for negligent hiring and supervision, also under Pennsylvania common law. Following extensive discovery, Live Nation moved for summary judgment.[2]

The District Court granted summary judgment for Live Nation, reaching the following conclusions: (1) Live Nation was not a state actor for purposes of § 1983 liability; (2) Live Nation was not an employer of the police officers and, thus, was not subject to vicarious liability under a theory of respondeat superior; (3) Live Nation's alleged conduct in negligent hiring and supervision of the police officers was not the proximate cause of the alleged harm to Ms. Cahill; and (4) even if proximate cause did exist, Live Nation was not subject to liability under Section 414 of the Restatement (Second) of Torts for the actions of its independent contractor because it had not retained sufficient control over the police officers.[3] *Cahill*, 866 F.Supp.2d at 508–19. Appellant timely appealed.

## II. *JURISDICTION AND STANDARD OF REVIEW*

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

We review a district court's grant of summary judgment de novo, using the same standard as the district court. *Pichler v. UNITE*, 542 F.3d 380, 385 (3d Cir.2008). Summary judgment is only appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56; *see United States v. Donovan*, 661 F.3d 174, 184–85 (3d Cir. 2011). The reviewing court should view the facts in the light most favorable to the non-moving party, in this case Appellant, and draw all reasonable inferences in that party's favor. *Scheidemantle v. Slippery*

---

**2.** Prior to the filing of summary judgment, Appellant settled with Defendant Haschak, who was then voluntarily dismissed from the action. Defendants Hanover Township and Chief Geho also moved for summary judgment. The District Court granted summary judgment as to both. *Cahill*, 866 F.Supp.2d at 525.

**3.** On October 3, 2011, subsequent to the District Court's grant of summary judgment, Appellant reached a settlement with Defendant Zoller (which also resolved any potential claims against Hanover Township and Chief Geho).

*Rock Univ. State Sys. of Higher Educ.,* 470 F.3d 535, 538 (3d Cir.2006).

## III. *ANALYSIS*

Appellant contends that the District Court erred by granting summary judgment to Live Nation on his § 1983 claim and state law claims. We will address each in turn.

### A. *Section 1983 Claim*

In order to establish a § 1983 claim, a plaintiff "must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under the color of state law." *Kneipp v. Tedder,* 95 F.3d 1199, 1204 (3d Cir.1996) (alteration in original) (internal quotation marks omitted). A private entity, such as Live Nation, is only liable under § 1983 if it "may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). Courts have deemed private entities to be "state actors" under a variety of tests. The test most applicable here is the "joint action test," where a private party will be deemed a state actor if it is a "willful participant in joint action with the State or its agents." *Id.* at 941, 102 S.Ct. 2744 (internal quotation marks omitted). Live Nation's behavior qualifies for the joint action test because it is an appropriate means by which to examine Live Nation's contractual relationship with the Hanover Township police officers. *See Tsao v. Desert Palace, Inc.,* 698 F.3d 1128, 1140 (9th Cir.2012) (utilizing the joint action test where a casino has a "system of cooperation and interdependence" with the local police department).

Regardless of the test employed, the inquiry must be fact-specific. *Groman v. Twp. of Manalapan,* 47 F.3d 628, 638 (3d Cir.1995); *see Lugar,* 457 U.S. at 939, 102 S.Ct. 2744 ("[T]he question is whether [the private party] under the facts of this case ... may be appropriately characterized as [a] 'state actor[ ].' "). The inquiry must also take into account "the totality of the circumstances and cannot be limited to a single factual question." *Harvey v. Plains Twp. Police Dep't,* 635 F.3d 606, 610–11 (3d Cir.2011). Additionally, under a summary judgment analysis, there must be no genuine dispute of material fact with respect to the question of whether a private entity actively exercised power possessed by virtue of state law and made possible only because it was clothed with the authority of state power. *See Groman,* 47 F.3d at 639 n. 17.

Our jurisprudence on joint action is set forth in *Cruz v. Donnelly,* which requires a two-part inquiry. 727 F.2d 79 (3d Cir. 1984). In *Cruz,* employees of an A & P store became suspicious of a shopper and called the police. *Id.* at 79. Upon the police's arrival, the A & P store manager accused Cruz of shoplifting and "ordered and commanded" the officers to strip search Cruz, which they did. *Id.* Cruz brought a § 1983 suit against A & P and the store manager. The district court held that neither A & P, nor the store manager, was a state actor and granted summary judgment in their favor. We affirmed and held that a private entity may only be deemed a state actor, and therefore be liable under § 1983, for the actions of police officers if: (1) the private entity has a "prearranged plan" with the police officers, and (2) under the plan, the police officers will "substitute their [own] judgment" with that of the private entity's. *Id.* at 81–82.

Appellant has clearly presented sufficient evidence to satisfy the first prong: the existence of a pre-arranged plan. Live Nation and Hanover Township entered into a formal contract requiring Hanover Township to provide police officers to Live

Nation for use as part of its security force for events held at the Post–Gazette Pavilion throughout the 2008 calendar year. Under the terms of the contract, the police officers who were assigned to the Pavilion were responsible for traffic and crowd control and for keeping the peace.

Appellant has presented no evidence to satisfy the second prong. Despite the pre-arranged plan, the record does not reflect or give any indication that the Hanover Township police officers substituted their own independent judgment with that of Live Nation's. In fact, the evidence adduced from the record is to the contrary. Chief Geho testified that the police officers were to use their independent judgment, as well as their experience and training as police officers, when handling situations that arose at the Pavilion. Chief Geho also testified that officers were to use their own judgment when deciding whether someone should be stopped for, or charged with, violating a law or ordinance, and the amount and type of force which should be used. (*Id.*) As Appellee correctly avers, "there is no evidence that Live Nation told the Hanover Township police that they were to issue citations to and use force against [concert attendees] and that the Hanover Township police blindly obeyed

this directive without any thought as to whether this would be an appropriate course of action." (Appellee Br. 29–30.)

Appellant claims that the record creates a dispute of material fact as to the amount of control exercised by Live Nation over the police officers. We disagree. The record is clear that, although Live Nation worked with Chief Geho to establish overall objectives of traffic control at the Pavilion, the police officers retained their autonomy as officers of the law at all times while patrolling.[4] (App. 690 (Michael Gentille, Live Nation's Senior Director of Operations, testified that he had no "ability or authority to direct [the police officers] how to interact with individuals with whom they came into contact at the [Pavilion]," and that the officers were to "act as regular police officers" while working events)); (App. 735 (Chief Geho averred that employees of the Pavilion had no authority to instruct the police officers on how to perform their law enforcement duties).) This is true even though almost all of the police officers worked exclusively for Live Nation at the Pavilion during the concert season and did not work directly for the municipality during that time. Oral Argument at 57:36, *Cahill v. Live Nation*, (No. 11–4056), *available at* http://www.ca3.uscourts.

---

4. Appellant points to testimony of Lance Jones, the General Manager for Live Nation, as evidence that Live Nation, through Michael Gentille, Live Nation's Senior Director of Operations, asserted control over how the police officers maintained traffic control. (App. 612 ("A: ... [S]ecurity and the police fell under the realm of operations ... Q: So the director of operations would have the direct responsibility for security? A: Yes."); App. 616 ("Q: ... [W]ithin the venue and within the parking lot area [of the Pavilion], was it Mr. Gentille who had the final authority to say, if there was any issue, how the traffic control was going to be done. A: ... Yes, that's fair to say.").) Looking at the other evidence in its context, however, the record is clear that Live Nation only controlled the overall objectives of traffic control, not the method of enforcing traffic control. (*See, e.g.*, App. 138–39 (contract stated that Live Nation and Hanover Township will mutually agree as to the number of officers, but that "the manager [Chief Geho] will be responsible for coordinating, scheduling, supervising and assigning all officers"); App. 547–48 (Gentille testified that he does not participate in "walk-through's" in which Chief Geho instructs the police officers on traffic control); App. 567–69 (Gentille testified only that he provided suggestions to Chief Geho as to the number and placement of officers, as well as potential issues officers should be aware of such as underage drinking, at the Pavilion during events).) This is a critical distinction.

gov/oralargument/ListArgumentsAll.aspx (Appellant asserted that only Chief Geho and one other officer in a managerial role worked for the municipality as well as Live Nation.).

Appellant maintains that this case is distinct from *Cruz* because here, the police officers were expected to use their police powers in enforcing Live Nation's rules even where there was no crime committed. (Appellant Br. 32; *see* App. 578–79 (Gentille agreeing that the police officers "would use their badge of authority and police authority to enforce the in-house policies and rules" of the Pavilion).) Specifically, Appellant asserts that Live Nation had an in-house rule which forbade pedestrians in the so-called "fire lane," (App.552–53, 556), a rule which was not codified under any municipal or state law, but which Appellant claims was the basis for the officers' actions against Ms. Cahill.

Appellant's argument falls flat because even if the officers' interaction with Ms. Cahill was motivated by an attempt to enforce the in-house fire lane rule, this is not sufficient to transform Live Nation into a state actor. Such a notion would not be in keeping with *Cruz*'s requirement for the substitution of judgment. Moreover, under the jurisprudence of our sister circuits, enforcement of a private entity's rule by police officers has only given rise to liability under § 1983 where the rule itself is per se unconstitutional. *See Wickersham v. City of Columbia*, 481 F.3d 591, 598–99 (8th Cir.2007) (finding state action when a private organization hires police officers to enforce its unconstitutional rule against protesting and soliciting at an air show); *D'Amario v. Providence Civic Ctr.*

*Auth.*, 783 F.2d 1, 1–3 (1st Cir.1986) (holding that a promoter of concerts is a state actor when it uses public employees to enforce its unconstitutional "no cameras" rule during concerts). That is clearly not the case here.

Appellant's assertion that the District Court resolved factual disputes and made credibility assertions is also without merit. For the reasons outlined above, it is irrelevant to our analysis which behavior motivated Zoller's confrontation with Ms. Cahill (be it violating the in-house fire lane rule or other disorderly behavior). The District Court properly recognized that the essential issue was only whether there was "evidence to demonstrate that the police substituted the judgment of private parties for their own official authority," and that "the record does not reveal a genuine [dispute] of material fact as to [this issue]." *Cahill*, 866 F.Supp.2d at 512 (internal quotation marks omitted).

Appellant alternatively seeks to have Live Nation deemed a state actor pursuant to the reasoning and holding in *Groom v. Safeway* from the Western District of Washington. 973 F.Supp. 987 (W.D.Wash. 1997). Specifically, Appellant asks us to adopt the so-called entwinement theory[5] enunciated in *Groom* and find that the "unprecedented interrelationship" between Live Nation and Hanover Township police officers transforms Live Nation into a state actor for purposes of § 1983 liability. (Appellant Br. 34.)

We decline to apply the reasoning in *Groom*. Besides *Groom*'s lack of precedential value, we are unconvinced that a private entity can unilaterally be saddled with § 1983 liability merely by hiring in-

---

**5.** The Supreme Court has recognized the entwinement theory as a premise for finding state action where "the nominally private character" of a private entity "is overborne by the pervasive entwinement" with public insti-

tutions or officials. *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 297–98, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001).

struments of the state. The Supreme Court's and our jurisprudence require more before a private entity is transformed into a state actor. *See, e.g., Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (explaining that joint action involves a "meeting of the minds"); *Harvey v. Plains Twp. Police Dep't,* 421 F.3d 185, 195 (3d Cir.2005) (explaining that a joint action requires "some sort of common purpose or intent").

We therefore determine that there are no facts upon which Appellant can demonstrate that Live Nation is a state actor for purposes of § 1983 liability.

### B. *Remaining Issues on Appeal*

Appellant Cahill also appealed the District Court's other findings on his state law claims. As an initial matter, both parties agree that Appellant's settlements with Zoller and Haschak extinguish his vicarious liability claims against Live Nation. *See Mamalis v. Atlas Van Lines, Inc.,* 522 Pa. 214, 221, 560 A.2d 1380 (1989) (holding that a settlement with the agent releases all claims against the principal where those claims are brought under a theory of vicarious liability). Thus, the appeal as to the state vicarious liability claim is moot.

Regarding Appellant's state claim of negligent hiring and supervision, we need not reach the substance of this claim either. The District Court granted summary judgment on this claim for lack of proximate cause, *Cahill,* 866 F.Supp.2d at 515, but Appellant failed to challenge the specific issue of proximate cause in his principal brief. Appellant's failure to raise this issue in his opening brief constitutes a waiver of this issue, and we need not address it. *See Free Speech Coal., Inc. v. Att'y Gen. of United States,* 677 F.3d 519, 545 (3d Cir.2012) ("[I]f an appellant fails to [raise an issue in his opening brief], the appellant normally has abandoned and waived that issue on appeal and it need not be addressed by the court of appeals." (first alternation in original) (internal quotation marks omitted)).

### IV. *CONCLUSION*

For the foregoing reasons, we affirm the District Court's grant of summary judgment.