HOLLOWAY, Circuit Judge,
dissenting.
I am convinced that the Plaintiffs Ya-naki and Moss have sufficiently alleged state action with respect to Count I of their § 1983 claim. Therefore we must reverse the district court’s grant of dis *1211 missal of Plaintiffs’ § 1983 case under Fed.R.Civ.P. 12(b)(6). For the reasons discussed below, I thus respectfully dissent.
The Majority Opinion bases its affir-mance of the dismissal on the following conclusions:
Without a challenge to the constitutionality of the underlying state laws or any suggestion of a conspiracy between Defendants and the police, the actions of the police in discharging their official duties do not distinguish Plaintiffs claims from the claim rejected in [Lugar v. Edmondson Oil Co., 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) ].
Thus, Plaintiffs’ fail to satisfy the first part of the color of law test because the conduct that Plaintiffs’ complain deprived them of their constitutional rights was caused by and can only be attributed to private defendants.
Maj. Op. at 1210. (emphasis added). I can accept the Majority’s conclusion that Plaintiffs have not challenged the constitutionality of the state laws upon which the magistrate relied in issuing the Search Order or the Supplemental Order in Aid of Enforcement.[1] Thus, even without a challenge to the constitutionality of state laws, I disagree with the Majority's conclusion that Plaintiffs failed to sufficiently allege concerted action between the private Defendants and the police in order to support a finding that the Defendants were acting “under color of state law.”
Because we are called on here to review the' district court’s grant of a motion to dismiss under Fed.R.Civ.P. 12(b)(6), we must accept all well-pleaded factual allegations as true, and view them in the light most favorable to the non-moving party. Sutton v. Utah State School for the Deaf and Blind, 173 F.3d 1226, 1236 (10th Cir.1999).
We are instructed firmly that a 12(b)(6) motion should not be granted “unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” Conley v. Gibson, 355 U.S. at 45-46, 78 S.Ct. 99. Our function on a R. 12(b)(6) motion is “not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiffs complaint alone-is legally sufficient to state a claim for which relief may be granted.” Sutton, 173 F.3d at 1236; Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir.1991).
The Supreme Court in Lugar identified a two part test for determining whether conduct allegedly causing the deprivation of a federal right may be fairly attributed to the state for the purposes of a § 1983 claim:
First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible ... Second, the party charged with the deprivation must be a person who may *1212 fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.
Lugar v. Edmondson Oil Co., 457 U.S. at 937, 102 S.Ct. 2744. In the instant case, Plaintiffs allege three counts by which they claim a deprivation of their rights “under color of state law” in violation of § 1983. App. at 36-42 (Yanaki); 153-58 (Moss). The first count deals with the search of Yanaki’s home itself, and seizure of materials within it, conducted by Defendants in concert with Salt Lake County officers. App. at 36-38; 153-55. Plaintiffs argue that this search was unreasonable, based on an unlawful private warrant and without probable cause. Id. The second and third counts address Defendants’ actions in obtaining the ex parte Search Order and Supplemental Order, which Defendants claimed authorized their search. App. at 38-42; 155-58. Accepting the Majority’s conclusion that the Plaintiffs fail to challenge the constitutionality of any state laws under which the Orders were issued, the second and third counts would therefore amount to allegations of no more than “private misuse of a state statute,” which does not meet the first prong of the Lugar test. See Lugar at 941, 102 S.Ct. 2744.
However, Count I of Plaintiffs’ § 1983 complaint, which asserts multiple allegations about conduct during the execution of the search order, does meet both prongs of the Lugar test and does sufficiently allege action “under color of state law” within the meaning of § 1983 so as to survive a motion to dismiss. The first prong of the Lugar test — that the deprivation of a right is attributable to the state — • is satisfied when “the authority of state officials ... put the weight of the State behind Defendant’s private decision]!]” Lugar at 940, 102 S.Ct. 2744. The Court in Lugar further instructs that the second prong, identification of a defendant as a state actor, may arise “because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the state.” Id. at 937, 102 S.Ct. 2744 (emphasis added).
In Gallagher v. Neil Young Freedom Concert, 49 F.3d 1442, 1453-56 (10th Cir.1995), we surveyed several instances in which courts have found action “under col- or of state law” where governmental and private parties have acted together (the so-called “joint action” test). We noted that “[j]ust as with the other tests for state action, the mere acquiescence of a state official in the actions of a private party is not sufficient.” Id. at 1453. One way of inferring a joint action claim is where “both public and private actors share a common, unconstitutional goal.” Id. at 1454. An alternative approach is “focused on the manner in which the alleged constitutional deprivation is effected.” Id. The precedents hold that, “if there is a ‘substantial degree of cooperative action’ between state and private officials, or if there is ‘overt and significant state participation’ in carrying out the deprivation of the plaintiffs constitutional rights, state action is present.” Id. (internal citations omitted). Typically, the joint action test can be satisfied where police are involved in cooperative action with a private party when “the police have substantially assisted in the allegedly wrongful conduct.” Id. at 1455.
An unreasonable search or seizure is clearly “wrongful” when conducted by a state official. Such a search or seizure violates the Fourth, Fifth and/or Fourteenth Amendments and may be the subject of a suit under § 1983. See e.g. Burdeau v. McDowell, 256 U.S. 465, 475, 41 *1213 S.Ct. 574, 65 L.Ed. 1048 (1921) (“The Fourth Amendment gives protection against unlawful searches and seizures, and as shown in the previous cases, its protection applies to governmental action.”); Zinermon v. Burch, 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) (“[The Due Process] Clause incorporates many of the specific protections defined in the Bill of Rights. A plaintiff may bring suit under § 1983 for state officials’ violation of his rights to, e.g., freedom of speech or freedom from unreasonable searches and seizures.”) In the instant case, assuming that the search of Yanaki’s and Moss’s home on behalf of private party Defendants was unreasonable,[2] the search becomes a constitutional violation if police lend the imprimatur of the state to it by “substantially assisting” the private defendants in carrying it out, and the private defendants in turn become “state actors” if they exercise a “substantial degree of cooperative action” with police or if they “share a common, unconstitutional goal.”
There are numerous allegations in the complaint which should fairly be read to demonstrate both significant assertion of authority by Deputy Sheriffs, which put the weight of the State behind the search of Plaintiffs’ home, and substantial cooperative action between Defendants and the officers in conducting the search, which establish Defendants as state actors. The Complaint alleges that at approximately 8:00 a.m. on Monday morning, April 15, 2002, Defendant attorney Matkin and Sherijfs Deputy Kopp rang the doorbell of Yanaki’s home three separate times, awakening Plaintiff Moss.App. at 7. After she refused them entry, Mr. Matkin, an Iomed attorney, said: “We can come in now, or we can come in later.” Id. at 8. Deputy Sheriff Kopp, “to support Matkin’s statement and to intimidate Moss, said: ‘we can kick in this door.’ ” Id. (emphasis added). After leaving to obtain a writ of assistance from the state magistrate, the Majority Opinion notes that Defendant Matkin returned to Yanaki’s home and that Matkin and Officer Kopp and others entered Yanaki’s home and commenced the search. Maj. Op. at 1206. “Shortly thereafter a second police officer, Sergeant Kendra Herlin,' arrived to assist.” Id. (emphasis added). The Majority Opinion also states that the “officers seized Moss and Yanaki’s computer and other material belonging to them.” Id. (Emphasis added).
The above allegations are analogous to those considered by the Ninth Circuit in Howerton v. Gabica, 708 F.2d 380 (9th Cir.1983), a case which we cited approvingly in Gallagher. Howerton dealt with a landlord’s private eviction of his tenants, executed with significant involvement and assistance from local police. There was no allegation of unconstitutionality regarding any underlying state law which would have allowed the eviction. Indeed, the tenants contended that the eviction in Howerton was illegal under state law. See id. at 381.[3]- The court noted:
*1214 This case involves more than a single incident of police consent to “stand by” in case of trouble. Police were on the scene at each step of the eviction. Mr. Gabica testified that the police presence gave him the feeling he had the right to cut off the utilities. Moreover, the police officer actively intervened — he privately approached the Howertons and recommended that they leave the trail-erhouse.
Id. at 384. The court further reasoned as follows:
The Supreme Court in a 1983 action has affirmed a judgment against a private party where state agents seized the plaintiffs property, the agents acting pursuant to statute upon the private party’s ex parte application. E.g., Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). See also Lugar [,] [457 U.S. at 934, 102 S.Ct. 2744]. On the other hand, a private repossession pursuant to a state statutory provision is not state action. Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 164-66, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). In this case, the Howertons claim the Gabicas chose a middle road, using the police to facilitate an illegal repossession. If true, we think this constituted state action.
Id. The Ninth Circuit therefore reversed the district court’s dismissal, holding that the facts as alleged were sufficient to support the conclusion that the landlord had acted “under color of state law.”
As in Howerton, state officers in this case were on the scene throughout Defendant’s search of Yanaki’s and Moss’s home and seizure of their property. They clearly facilitated the allegedly illegal search and seizure at Yanaki’s and Moss’s home in the same manner that the police facilitated the allegedly illegal repossession in Howerton. I therefore believe, as in How-erton, that the district court’s dismissal of Yanaki’s and Moss’s Count I must be reversed.[4]
Accordingly, I respectfully dissent.

. I do not find that a clear- concession was made that the Plaintiffs are not challenging the constitutionality of the Utah laws involved. For example see Aplt. Op. Br. at 19 ("The state laws that served as the basis of the state judge's search and seizure orders, whatever those laws are, violate the Fourth Amendment's prohibition .against unreasonable searches and seizures.”). However, for purposes of my analysis, I need not decide whether such a concession was made. This is because, as I explain below, in any event I am persuaded that there are sufficient allegations in the Plaintiffs’ complaints of concerted or conspiratorial conduct by Defendants with the state officers so that we cannot say that the Plaintiffs can prove no set of facts in support of their claims which would entitle them to relief. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Rather, those allegations detailed below clearly support an inference of concerted action between Defendants (including Iomed’s lawyers) and Deputy Sheriffs.

. While Defendants maintain that the search and seizure executed were reasonable, see Aplee Br. at 23-25, the Supreme Court has recognized that a determination of reasonableness implicated factual elements. See e.g. O'Connor v. Ortega, 480 U.S. 709, 729, 107 S.Ct. 1492, 94 L.Ed.2d 714 (reversing and remanding summary judgment for determination of factual elements necessary to determine reasonableness.). Given the myriad factual allegations of unreasonableness in the instant Complaint, it would be inappropriate for us to malte a determination of reasonableness at this stage.

. This is comparable to the instant case where Yanaki argues that the Search Order and Supplemental Order in Aid of Enforcement were also contrary to state law. It might be argued that the actions of state officers in executing *1214 an illegal eviction or an illegal court order cannot be attributable to the state because the eviction or court order is contrary to state policy. In these cases, however, the officers are the state. The fact that officers may have been acting contrary to relevant state policy could shield their employer from liability under Monell v. Department of Social Services, 436 U.S. 658, 688-94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (holding that municipalities were "persons” liable under § 1983 for constitutional violations that resulted from official policy or informal "custom,” but not on a respondeat superior basis for injuries caused solely by individual employees' actions). But that circumstance would not shield any private parties who directly and closely acted in concert with the officers in their unconstitutional conduct.

. The Majority Opinion in its footnote 11 attempts to escape the force of Howerton v. Gabica, 708 F.2d 380 (9th Cir.1983), by arguing that Howerton is distinguishable because the Plaintiffs there used the police to put the weight of the state behind their private decision to evict. The allegations here cannot be so parsed against the non-moving parties. They must be read instead under the Supreme Court’s teaching in Conley v. Gibson, 355 U.S. at 45-46, 78 S.Ct. 99, to see whether some set of facts might be shown to entitle the non-moving parties to relief. And under Lugar, 457 U.S. at 941, 102 S.Ct. 2744, private parties' (like Iomed’s lawyers') "joint participation with state officials” (like Kopp and Herlin) was sufficient to characterize the private parties as state actors for purposes of the Fourteenth Amendment.
The complaints of Yanaki and Moss must be read most favorably to those Plaintiffs to determine whether they averred circumstances under which a showing could be made that *1215 the Defendants "put the weight of the State behind their private decision ...” Lugar at 940, 102 S.Ct. 2744. We must note that in Yanaki’s complaint he alleges:
On April 15, 2002, Matkin, Crowther and Johnson [Defendants-Appellees] conducted an illegal search of Yanaki's home, jointly, under color of state law, with the Salt Lake County Sheriff's Office, and the search was a state action conducted pursuant to orders from a state court judge ... on April 15, 2002, Matkin, Crowther and Johnson illegally seized property that belonged to Ya-naki from his home jointly under color of state law, with the Salt Lake State Sheriffs Office and the seizure was a state action, conducted pursuant to orders from a state court judge ... the search and seizure was unreasonable under the circumstances ...
App. 136-137. Parallel allegations are made in the complaint of Moss. See App. at 153-154.
To me, these allegations are clearly adequate to permit a showing that the Sheriff's Deputies participated in conducting the search and removing property of Yanaki and Moss, and they demonstrate putting the weight of the state behind the search and seizure.